IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| MICHELLE R. COLLETTE, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 2:06-cv-166 |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) | |
| Defendant | ) | |


**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, plaintiff's motion for summary judgment [Court File #9] will be denied; defendant's motion for summary judgment [Court File #12] will be granted; and the final decision of the Commissioner will be affirmed.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the defendant in this civil action.

I.

*Factual Background*

Plaintiff is a 40-year-old female born January 9, 1967. She has a high school education and one year of college. She has past relevant work experience as a billing clerk and a claims representative. Her past work as a billing clerk was semi-skilled and sedentary and as an assistant claims representative was semi-skilled and light. She alleges that she became disabled on September 1, 1998, due to pain and numbness in her back, neck, shoulders, arms, legs, and hips, as well as depression and anxiety.

At her hearing before the administrative law judge (ALJ), the plaintiff testified that she had back surgery at the age of 15 due to scoliosis and that a rod was placed in her back. In October or November 2002, to alleviate back pain, plaintiff had breast reduction surgery. She testified that that surgery did not help her back pain. She further testified that the weather can make her back pain worse and that the pain radiates to her neck and hips and the pain in her middle back hurts through her chest. She testified that her legs sometimes go numb and that her physician told her that there is nothing to be done to help her back and that it will continue to worsen.

She further testified that the pain affects her ability to squat and stand and that she is unable to bend because she cannot get back up. She testified that she can only stand for 15 to 30 minutes because of low back pain and that she has pain in her arms and hands three to four times a week and that the pain lasts all day. She further testified that physical therapy did not help and was a waste of time.

Plaintiff testified that her husband performs all of the household chores, but that she occasionally cooks meals and does the laundry. Her husband and daughter help her with the laundry. She stated that she can wash dishes for 10 minutes, but that then must take a break. She claims that she is unable to make the beds or lift more than five to ten pounds due to the pain. She testified that she drives her daughter to school on a daily basis and that she goes to gymnastics and t-ball games. She reports that her present condition is the same as it was in 2003. Further, she testified that she shops at Wal-Mart one time per week but is accompanied by someone and uses the buggy to lean on.

Due to anxiety and depression, she takes Prozac and Valium and only travels to familiar places. In December 1993, she was hospitalized for symptoms related to depression and anxiety. She was last regularly treated by Dr. Moffett, a psychiatrist, for depression and anxiety, but last saw him in 1996. At the present time she does not receive mental health treatment.

A vocational expert also testified at the plaintiff's hearing that the plaintiff's past relevant work as a billing clerk and customer service representative were semi-skilled sedentary and light jobs. He further testified that if one assumed that a person had mild limitations from sustaining concentration, social interaction, and adaptation, she could perform the semi-skilled types of work that the plaintiff had performed in the past.

II.

*Medical and Psychiatric Evidence*

In 1993, plaintiff was treated for depression and anxiety by Dr. Moffett. Dr. Moffett diagnosed panic attacks with agoraphobia and major depression. Dr. Moffett prescribed medication and recommended that plaintiff see a counselor for group therapy. Plaintiff attended individual therapy during 1993 and her first group session, but beginning in March 1994, plaintiff no longer attended her group session.

Following a four-year gap in treatment, in April 1998, plaintiff came to Frontier Health regarding a mood disorder. She claimed that she was not working at that time because she was afraid to leave her daughter. At that time plaintiff indicated that she had panic attacks in the past and occasionally felt panicked in

4

stores. In 1999, plaintiff was discharged from therapy because she did not appear and had made no contact for five months.

In 2000 and 2001, plaintiff was seen for complaints of back pain, but upon conservative treatment, including electrical stimulation, her pain was helped. In May 2001, at a routine physical, other than low back pain plaintiff reported that she was doing well. In October 2001, a cervical spine x-ray revealed scoliosis and mild spondylosis, but was otherwise normal. In November 2002, plaintiff underwent breast reduction surgery in order to alleviate back pain. Also in November 2002, plaintiff reported a six-week history of mood swings, anxiety, and feeling stressed out and irritable and was given samples of Zoloft.

In February 2003, plaintiff reported night sweats and anxiety but her mood was positive and her affect appropriate. By April 2003, her night sweats were subsiding and plaintiff reported that she "probably does not even need to take" Zoloft. She also complained of back pain and had tender points and persistent scoliosis. Her medication was switched to Paxil.

A May 2003 lumbar spine x-ray was normal. In June 2003, plaintiff reported increased anxiety and symptoms of obsessive compulsive disorder. Her neurological findings were negative and her medication dosage was increased. She

reported that Paxil controlled her obsessive compulsive disorder, but she had a return of night sweats when she stopped taking Xanax. Klonopin was prescribed. Later, plaintiff reported improvement with her night sweats but claimed that she had pain all over.

In July 2003, plaintiff was referred for an evaluation of left shoulder pain. X-rays were negative, but an MRI suggested a ganglion cyst. Plaintiff later underwent injections for that shoulder. No physician suggested that the shoulder condition interferes with any work-related tasks. In August 2003, plaintiff reported intermediate tingling on the left side of her face and left arm. An MRI of her brain was negative. Plaintiff was told to take an aspirin each day. Later that month, plaintiff reported that she was doing well on Paxil, that Klonopin helped her sleep, and that Valium helped her night sweats.

In October 2003, plaintiff reported that she was emotionally overwrought and was tired of hurting. Her medication was adjusted, but she denied wanting any counseling. A few days later, plaintiff wanted "to know if she can get a letter stating that she is unable to work." In November 2003, plaintiff reported that she was doing fairly well on Paxil and was applying for disability.

6

In December 2003, plaintiff reported that she had had a "break down" the previous week after her husband was laid off. Later that month, plaintiff reported that she did not go to physical therapy because she could not afford it. However, she indicated that she felt better, and her physician, Dr. Klinar, reported that her condition had improved without doing a whole lot. (R.342). He recommended strengthening exercises, but no other treatment.

In March 2004, a state agency physician reviewed the medical evidence and concluded that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and could sit, stand, and walk for six hours each in an eight-hour workday.

In April 2004, plaintiff was consultatively examined by Dr. Steven Lawhon, a licensed clinical psychologist. Plaintiff had an anxious and depressed mood, but she denied suicidal ideation, hallucinations, or delusions. She recalled three presidents and performed serial sevens; her short-term memory appeared in tact; and she had an estimated average intellectual functioning. She appeared only mildly to moderately anxious and depressed; she performed typical activities of daily living, and enjoyed reading. She was diagnosed with depression and anxiety disorder, and assigned a present Global Assessment of Functioning (GAF) score of 60, with a past GAF score of 70. Dr. Lawhon concluded that plaintiff's ability to

7

understand and remember was not significantly limited; that she had a mild limitation with concentration and persistence, social interaction and work adaptation.

In May 2004, Dr. George Davis, a state agency psychologist, reviewed the medical evidence and concluded that plaintiff did not have a severe mental impairment.

The medical record also contains treatment notes of Dr. Peter Platzer of the Holston Medical Group, who treated the plaintiff from May 13, 2002, through January 15, 2004. During that time, he addressed the following complaints with the plaintiff: GERD, chest pain/tightness, right periscapular pain, cervical dysplasia, chronic low back pain, scoliosis status post-Harrington rod placement, bee sting, insomnia, dyspepsia, cellulitis, cough, upper respiratory infections, anxiety disorder, irritability, mood swings, sinusitis, musculoskeletal pain, epigastric, night sweats, right hip pain, depression, obsessive and compulsive type behavior, episodes of tingling in the anterior thighs, weakness of the upper legs, left shoulder plain, neck pain, swelling in the left side of her body, bilateral leg pain, episode of lightheadedness, possible fibromyalgia, left shoulder cyst, menstrual irregularity, left knee pain and swelling, intermediate tingling along the left side of the face and in the upper left extremity, stress, fatigue, severe menstrual cramps, co-lateral fibular ligament sprain, recurrent panic attacks, and headache.

In response to a request for medical information from the Tennessee Department of Human Services, on February 3, 2005, Dr. Platzer reported that plaintiff was physically or mentally unfit for employment or training for employment in his medical opinion. He opined that the plaintiff would be unable to work or participate in training for work indefinitely.

The record also contains a "medical statement" submitted by Dr. Platzer which contains, among other things, the following description of plaintiff's physical and mental impairments:

. . .

> 4. Michelle also suffers from chronic back pain. Throughout the three years that I have cared for her, recurrent back and particularly left periscapular pain have been chronic recurrent problems. She has never been able to get any satisfactory relief. This chronic pain has certainly contributed to her underlying anxiety and depression.
>
> 5. In short, Michelle Collette is a 38-year-old woman with a very fragile psyche. She has frequent anxiety attacks and emotional breakdowns. She cannot deal with stress. She has episodes of obsessive compulsive behavior and agoraphobia, which limits her ability to function. She has been unable to get counseling in the past because of financial resources. In short, Michelle is an individual who is emotionally incapable of dealing with any significant life stressor. She is, in my opinion, emotionally disabled.

(R.482).

III.

## *Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

# IV.

## *Application of the Five-Step Evaluation Process*

Disability is evaluated pursuant to a five-step analysis summarized as follows:

(1) If claimant is capable of doing substantial gainful activity, he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof in the first four steps.

*Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *See id.*

V.

*Analysis*

In the instant case, the ALJ stopped at step four of the five-step sequential evaluation process concluding that plaintiff was capable of performing her past relevant work as a billing clerk or assistant claims representative.  The court finds that the ALJ's determination that the plaintiff was capable of a full range of light work is supported by substantial evidence in the record.

Plaintiff claims that she became disabled on September 1, 1998.  However, April 1999 x-rays show only mild scoliosis or spondylosis and only occasional treatment at the Frontier Health Agency from April 20, 1998, through October 7, 1999, when she was diagnosed with depression and anxiety but assigned a GAF score of 60, indicating only mild to moderate symptoms.

With respect to plaintiff's claim of a severe shoulder impairment, there is no medical opinion to indicate that her shoulder imposed any significant limitation on her ability to work.  She received conservative treatment with injections. That

shoulder pain did not begin apparently until the middle of 2003. The injections substantially reduced her pain and although Dr. Klinar prescribed physical therapy, plaintiff did not go to it, but was feeling better with range of motion exercises.

With respect to the plaintiff's anxiety and depression, she was consultatively examined by Dr. Lawhon, a clinical psychologist, in April 2004. He concluded that her ability to understand or remember was not significantly limited, that she had a mild limitation with concentration and persistence, social interaction and work adaptation. Plaintiff's treating physician, Dr. Platzer, did not render any opinion as to how plaintiff's mental impairments may have affected her ability to do work-related tasks other than to give a conclusory opinion that plaintiff was "emotionally disabled." A claimant has the burden of proving disability by showing that her residual functional capacity precludes her from performing her past relevant work. *Bolin v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). With respect to the weight afforded Dr. Platzer's opinion, the ALJ is not bound by any physician's assessment and may reject unsupported opinions, *see Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988), because the weight to be given any physician's opinion depends on the extent to which it is supported by medical data or other evidence of record. 20 CFR §§ 404.1527(d)(3), 416.927(d)(3).

In this case, the ALJ considered plaintiff's daily activities, such as driving a car and assisting in preparing meals, in determining plaintiff's functional restrictions. 20 CFR §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

VI.

*Plaintiff's Assignments of Error*

Initially, plaintiff contends that the ALJ erred in failing to find plaintiff's mental impairments and shoulder impairment to be severe and failing to consider the effects of these impairments on her ability to work. The court disagrees. With respect to plaintiff's shoulder impairment, the medical evidence is clear that plaintiff had no shoulder problem in 1998 when she claimed the onset of disability and that her shoulder condition did not arise until 2003. At that time, Dr. Platzer referred the plaintiff to Dr. Klinar, an orthopedist, who injected the claimant's left shoulder on August 21, 2003. There is no evidence in the record that plaintiff's left shoulder interfered with her ability to work after that injection.

With respect to plaintiff's claim of mental impairment due to depression and anxiety, the ALJ was justified in relying upon the psychological consultative evaluation performed by the clinical psychologist, Dr. Lawhon. His report suggested that plaintiff's mental impairments were only mild and would not interfere with her

ability to perform a full range of light work.  Plaintiff's claim that she suffered from a severe mental impairment is also significantly undercut by her lack of treatment for those conditions for years.  Further, Dr. Platzer's own note, from January 20, 2005, states that samples of an antidepressant medication he provided to the plaintiff had been "very effective for her."  The court finds no error in the ALJ's conclusion that plaintiff's shoulder or mental impairment did not demonstrate a significant limitation in her ability to work.

Plaintiff also claims that the ALJ erred in failing to accord sufficient weight to the opinion of the plaintiff's treating physician, Dr. Platzer, and in failing to seek additional reports from Dr. Platzer after noting that Dr. Platzer had not submitted a narrative statement to support his opinions.  The court disagrees.  The ALJ was not bound by a conclusory opinion of even a treating physician where that opinion was not supported by the objective medical data of record.  The ALJ was warranted in rejecting his opinion.  Nor was the ALJ bound to seek additional opinions from Dr. Platzer where, as in this case, his opinions appear to be inconsistent with his own objective clinical findings.

15

VII.

*Conclusion*

In light of the foregoing, plaintiff's motion for summary judgment [Court File #9] is hereby DENIED; defendant's motion for summary judgment [Court File #12] is GRANTED; and the final decision of the Commissioner is hereby AFFIRMED.

Enter judgment accordingly.

                                                   *s/ James H. Jarvis*
                                             UNITED STATES DISTRICT JUDGE